PEDRO CASTRO ANGUITA, demandante y recurrido, *v.* BIBIANO FIGUEROA, ALFONSA RAMOS, OSVALDO CARDONA, demandados y recurrente el último.

*Número:* R-73-137   *Resuelto:* 14 de mayo de 1975

*F. Castro Amy*, abogado de Osvaldo Cardona.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

¿Constituye una mejora a una finca cedida en arrendamiento una casa edificada en ella por un agregado del arrendador y construida con la anuencia del arrendador y del arrendatario durante el término del arrendamiento? De hacerla suya por accesión el dueño de la finca, ¿tendría derecho a que el arrendatario pagara por ella? ¿De qué deterioro en la cosa arrendada responde el arrendatario? Tales son, en síntesis, las cuestiones aquí planteadas.

El 17 de abril de 1962, mediante escritura pública, don Pedro Castro Anguita cedió en arrendamiento a don Osvaldo Cardona una finca de aproximadamente ciento once cuerdas situada en un barrio de Juncos. Se pactó un plazo de cuatro años, prorrogable a siete a elección del arrendatario; y un canon anual de $3,000. A la sazón y desde hacía varios años

vivía en la finca, en calidad de agregado, el señor Bibiano Figueroa con su esposa. Además de la casa en que vivía el matrimonio, había en la finca varias edificaciones para ranchones y garaje. El arrendamiento se extendió hasta el 17 de abril de 1969, fecha de su vencimiento final.

En 1967 el agregado destruyó la casa en que vivía y comenzó la construcción de otra, de cemento, en la misma finca. No la había terminado al concluir el arrendamiento. Tanto el arrendador Castro Anguita como su arrendatario Cardona tenían conocimiento de la construcción iniciada y en progreso que hacía Figueroa y no la objetaron. De hecho la permitieron.

Al concluir el contrato Castro Anguita inició un pleito para hacer suya por accesión la casa construida por Figueroa, y para exigir de su ex arrendatario Cardona que le resarciera lo que tuviera que pagar a Figueroa, más una cantidad por el deterioro de las otras edificaciones. A solicitud del arrendatario decidimos revisar la sentencia que así lo dispuso, y que le condenó a pagar a Castro Anguita $4,162.00, valor acordado de la casa construida por Figueroa, y $1,450,00 como compensación por el deterioro de las otras edificaciones. (¹)

I

La sentencia del tribunal recurrido adoptó la contención del arrendador Castro Anguita de que la casa fabricada por el agregado es una mejora, apoyándose en la cláusula quinta del contrato de arrendamiento que dice:

" 'Todas las mejoras que le introduzca el arrendatario en la finca arrendada, así como en sus edificios, y las ampliaciones que edifique sobre la finca, quedarán al vencimiento del término de

---

(¹) El agregado, señor Figueroa, no se defendió ante el tribunal a quo y el caso en su contra se vio en rebeldía. La determinación del valor de la casa en la cantidad de $4,162.00 se hizo por acuerdo del arrendador y del arrendatario. El recurrido Castro Anguita no ha comparecido ante nos. Ni se opuso a la expedición del auto ni ha presentado alegato en oposición al de la parte recurrente.

este contrato, a beneficio del arrendador gratuitamente; asimismo quedarán a beneficio del arrendador gratuitamente, todos los frutos pendientes de cosecho existentes sobre la finca arrendada al vencimiento del término de este contrato.' "

█ Estamos de acuerdo en que la casa constituye una mejora a la finca en su sentido estricto, es decir, en cuanto su incorporación al fundo determina un aumento en el valor de éste a los fines de venta o renta. Véase Scaevola, *Código Civil*, ed. 1952, tomo XXIV, pág. 719, comentando el Art. 1573 del Código Español, equivalente al 1463 del nuestro, 31 L.P.R.A. sec. 4070. (²) Cf. *Marchand* v. *Montes*, 78 D.P.R. 131 (1955). No tenemos que considerar, sin embargo, el aspecto no poco complicado de si por tratarse de una edificación permanente quedaría el efecto del Art. 1463 atemperado por el 297, que más adelante transcribimos, respecto del derecho de accesión. Véanse sobre el particular *Berrocal* v. *Tribunal de Distrito*, 76 D.P.R. 38 (1954); *Toro* v. *Mojica*, 79 D.P.R. 630 (1956); *Figueroa* v. *Rodríguez*, 68 D.P.R. 266 (1948). En el caso ante nos no se plantea un derecho de accesión del arrendador contra su arrendatario porque no fue el arrendatario quien edificó, ni quedó establecido satisfactoriamente por la prueba que el que edificó lo hiciera por encomienda del arrendatario o para él.

█ La prueba establece que tanto Castro Anguita como Cardona tenían conocimiento de que Figueroa construía la casa, no se opusieron, y de hecho consintieron en ello. Bajo tales circunstancias Figueroa era un edificante de buena fe. Así lo reconoció implícitamente Castro Anguita al instar la demanda de accesión y lo dio por bueno el tribunal a quo al declararla con lugar. El derecho de accesión está reconocido en el Código sólo frente al edificante de buena fe, que a su vez tiene frente al propietario del suelo el derecho a ser indemni-

---

(²) Dicho artículo dispone: "El arrendatario tendrá, respecto de las mejoras útiles y voluntarias, el mismo derecho que se concede al usufructuario."

zado. Así surge del Art. 297 del Código Civil, 31 L.P.R.A. sec. 1164, que dice así en su segundo párrafo:

"El dueño del terreno en que se edificare de buena fe, tendrá derecho a hacer suya la obra, previo el pago al dueño de la obra del costo de los materiales y la mano de obra, o del costo de reproducción de la misma al momento en que el dueño del terreno ejercitare su derecho, deduciendo la depreciación, lo que resultare mayor, o a obligar al que fabricó a pagar el precio del terreno."

Así dispone el Art. 298, 31 L.P.R.A. sec. 1165:

"El que edifica, planta o siembra de mala fe en terreno ajeno, pierde lo edificado, plantado o sembrado sin derecho a indemnización."

Castro Anguita no puede beneficiarse del hecho de que su arrendatario Cardona tuviera conocimiento de la construcción en progreso del agregado Figueroa. La prueba ante nos no permite concluir, como pretende Castro Anguita, que Figueroa construyó autorizado por Cardona y no por Castro Anguita. Las siguientes circunstancias militan preponderantemente contra la posición de éste: Figueroa y su esposa ya vivían en la finca, como agregados del dueño, cuando se hizo el contrato de arrendamiento; entre el arrendatario y dichos agregados no se estableció relación alguna, a pesar del arrendamiento por aquél de la finca en que vivían, bien fuere dicha relación obrero-patronal o de simple amistad; el arrendador tuvo conocimiento de la construcción desde que se inició y no se opuso a ella; la construcción se inició en 1967, cuando el contrato de arrendamiento apenas estaba a dos años plazo para expirar. Es difícil concebir que la conducta del arrendatario, bajo esas circunstancias, constituyera un compromiso con el arrendador de pagar al agregado por dicha casa, la cual valía más de $4,000, y dejarla por tanto para beneficio de la finca. Sería pura candidez creer que el arrendatario pretendía regalarle dicha casa al arrendador.

## II

Respecto del deterioro de las otras edificaciones, el tribunal recurrido determinó que el arrendatario Cardona debe responder. Estamos de acuerdo.

Es cierto que las reparaciones necesarias a fin de conservar la cosa arrendada en estado de servir para el uso a que ha sido destinada corresponden al arrendador. Así lo dispone el Art. 1444 del Código Civil, 31 L.P.R.A. sec. 4051, en su segundo inciso, al enumerar las obligaciones del arrendador. Pero esta disposición, así como otras contenidas en el articulado que se refiere a las obligaciones del arrendador y del arrendatario, son supletorias, es decir, subsisten a falta de pacto en contrario. Véanse Manresa, *Código Civil Español*, ed. 1950, tomo X, pág. 542; Scaevola, obra citada, págs. 487 y 517. La escritura de arrendamiento de que nos ocupamos en este caso dice, en su hecho cuarto:

"El arrendatario recibe la finca objeto de este contrato, toda cercada de alambre de púas, y se obliga a devolverla en las mismas condiciones; asimismo será obligación del arrendatario conservar los edificios que enclavan en la finca, y que han sido relacionados."

■ La frase "conservar los edificios" no puede tener otro significado que el de mantenerlos en buen estado.

■ Independientemente de la cláusula del contrato que hemos transcrito, las reparaciones necesarias de que habla el Art. 1444 son aquellas que subsanan, como señala Scaevola, obra citada, pág. 518, el desgaste natural de la cosa; los deterioros que el propio arrendador o personas de su dependencia produzcan; las pérdidas que ocasione un caso fortuito. Véanse Castán, *Derecho Civil Español, Común y Foral*, sexta edición, tomo III, pág. 136; Manresa, obra citada, pág. 542 y siguientes. No se refiere esa frase al deterioro que es causado por la culpa del arrendatario, caso que está previsto en el Art. 1453 del Código, 31 L.P.R.A. sec. 4060, que dice:

"El arrendatario es responsable del deterioro o pérdida que tuviere la cosa arrendada, a no ser que pruebe haberse ocasionado sin culpa suya."

■ Este artículo establece la presunción de que si la cosa objeto del contrato se deteriora o se pierde, total o parcialmente, estando en poder del arrendatario, tal deterioro o pérdida se debe a su culpa salvo que demuestre lo contrario. Véase, Manresa, obra citada, págs. 603 a 604; compárese *Cabinero* v. *Cobián Theatres*, 81 D.P.R. 960 (1960). Este artículo es corolario del 1445, 31 L.P.R.A. sec. 4052, que en su segundo inciso preceptúa, como obligación del arrendatario, la siguiente:

"2. A usar la cosa arrendada como un diligente padre de familia, destinándola al uso pactado; y en defecto de pacto, al que se infiera de la naturaleza de la cosa arrendada según la costumbre de la tierra."

El recurrente pretende que se le releve de la responsabilidad que le es imponible bajo los Arts. 1445 y 1453 y bajo la cláusula citada de la escritura de arrendamiento a base de que, según alega, las edificaciones en cuestión estaban ya deterioradas cuando él tomó posesión de la finca, y que él nunca las usó. Pone gran énfasis en su testimonio al efecto de que eran ranchones viejos que no utilizó porque tenía otros ranchones en otra finca suya.

Ciertamente, no se trata aquí de edificaciones nuevas o de reciente construcción. Pero se trata de edificaciones relativamente grandes, construidas de cemento o sobre columnas de cemento armado, cuyo valor total para la fecha en que se constituyó el arrendamiento era de $9,500, y que en la fecha en que terminó el contrato estaban en las siguientes condiciones, según el testimonio del demandante recurrido:

"R. Los ranchos de arriba estaban desmantelados las paredes que tenía de zinc. Y a una parte de arriba le faltaba el techo. Y todo aquel empuje que le llaman de poner las varillas no existían en todo el rancho." (Transcripción, pág. 17.)

Más adelante, refiriéndose a una de las estructuras, declaró el recurrido:

"R. Por falta también del techo, las puertas y ventanas también faltaban. Y también tenía yo el que se usaba para guardar el abono destruido, sabe, toda la parte de zinc de arriba y las puertas." (Transcripción, pág. 18.)

La escritura de arrendamiento no hace referencia a las condiciones en que se encontraban las mencionadas edificaciones al tiempo de su otorgamiento. Dice el Art. 1452 del Código Civil, 31 L.P.R.A. sec. 4059:

"A falta de expresión del estado de la finca al tiempo de arrendarla, la ley presume que el arrendatario la recibió en buen estado, salvo prueba en contrario."

El testimonio del recurrente, única prueba ofrecida para contradecir esta presunción, no fue creído por el tribunal recurrido, por lo que la presunción queda en pie. Por otra parte, es difícil creer que tal estado de deterioro como el que refleja el aludido testimonio sea el resultado natural del transcurso del tiempo.

El argumento del recurrente de que no usó los ranchones milita en su contra. La ley manda que el arrendatario use la cosa como un diligente padre de familia. Como señala Castán, obra citada, pág. 140, la primera obligación del arrendatario bajo el inciso segundo del Art. 1445 es *usar* de la cosa. Citando de Colin y Capitant dice, pág. 140, que el arrendatario "no debe dejarla sin empleo, baldía si es una tierra, inexplotada si es un establecimiento mercantil, pues esta abstención sería dañosa al propietario, y aún tratándose de una casa-habitación, el arrendatario no está dispensado de habitarla si no justifica haber tomado las medidas propias para asegurar la conservación del inmueble en buen estado."

El concepto del "diligente padre de familia" no implica la abstención de usar la cosa arrendada, y no puede ampararse

en ese no uso el arrendatario para que se le exima de su responsabilidad. El uso de la cosa por el arrendatario es un derecho suyo, pero puede ser también un deber, si el no uso contribuye a deteriorarla.

"La diligencia es una forma de la actividad, es un modo o manera de obrar que consiste en proceder con atención, con cuidado, con esmero, previniendo los daños, reduciendo a sus más pequeñas consecuencias los que por caso fortuito avienen, conservando los elementos de la producción, reponiendo los efectos del desgaste." Manresa, obra citada, pág. 556.

De haber sido el recurrente, señor Cardona, dueño de la finca de seguro que no hubiese permitido, fuera por no uso, o por mal uso, que las edificaciones se deterioraran al extremo de quedarse sin techos, sin paredes y sin puertas. Esa no es la conducta que es de esperarse del diligente padre de familia. Debe, por tanto, responder por el deterioro.

El tribunal recurrido fue un tanto parco en sus determinaciones de hechos al estimar el deterioro de que debe responder el arrendatario en este caso. Estimó la depreciación en un treinta por ciento del valor que tenían las estructuras para la fecha en que comenzó el arrendamiento que, según concluyó, era de $9,500. Ese treinta por ciento equivaldría a $2,850. Empero, el tribunal concedió al demandante, por el deterioro atribuíble al arrendatario, la cantidad de $1,450, que es poco más de la mitad. Presumimos que hizo esa determinación sobre la base de que del treinta por ciento de depreciación, la mitad—es decir, un quince por ciento—se debió a la culpa del demandado, atribuyendo el balance al desgaste natural. Tal conclusión nos parece prudente y merece nuestro respeto.

*Se dictará sentencia modificando la sentencia del tribunal recurrido a los efectos de eliminar la partida de $4,162.00 hecha a favor del demandante contra el codemandado Cardona, y así modificada, será confirmada.*