# 98 DTA 204

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE PONCE Y AIBONITO
PANEL I**

JULIO CABAN RIVERA
Demandado-Apelado

v.

WAYNE MARINE, INC.
Demandado-Apelante

Núm. KLAN-97-00251

San Juan, Puerto Rico, a 11 de agosto de 1998

Panel integrado por su Presidente, Juez Negrón Soto
y los Jueces Aponte Jiménez y Segarra Olivero

Segarra Olivero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Wayne Marine, Inc. nos solicita la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Ponce, mediante la cual se declaró con lugar la demanda sobre incumplimiento de contrato y daños y perjuicios instada por la parte demandante-apelada de epígrafe.

Por las razones que exponemos más adelante, confirmamos en parte y revocamos en parte la

sentencia apelada.

Para enero o febrero de 1991, Julio Cabán Rivera (Cabán) y Wayne Marine, Inc. (Wayne) suscribieron un contrato de alquiler de una lancha de motor (la Santimara) propiedad del primero. Mediante este contrato, Wayne acordó pagarle a Cabán la cantidad de setenta y cinco ($75.00) dólares diarios por el uso de la lancha Santimara, la cual sería utilizada para llevar personal, materiales y equipo a Caja de Muertos. Las partes acordaron que Cabán estaría encargado de pagar los costos de reparación del motor, de proveer ancla, soga, seguro del casco de la embarcación, y sería responsable de la limpieza de la embarcación y de llenar el tanque con diesel cada fin de semana. A su vez, Wayne se obligó a proveer personal diestro para operar la lancha, a pagar por el aceite y el diesel, a proveer equipo de seguridad, seguro de P & I, y a pagar todos los lunes por el uso de la lancha correspondiente a la semana anterior. En la cláusula octava del contrato se estableció que Wayne sería responsable únicamente por reparaciones o pérdida de la embarcación que fueran causadas por su negligencia. Cabe destacar que en el contrato no consta la fecha en que fue suscrito ni el término de duración del mismo.

El 23 de julio de 1991 Wayne le envió una comunicación a Cabán mediante la cual le devolvió el certificado de numeración de la lancha expedido por el Departamento de Recursos Naturales y le acusó recibo de copia del marbete de la embarcación. El marbete original fue adherido a la lancha.

Posteriormente, el 30 de septiembre de 1991, Wayne le envió otra carta a Cabán en la cual le indicó que la última vez que utilizó la lancha fue el 25 de abril de 1991, que la transmisión de la misma estaba siendo reparada y que una vez se completara dicha reparación le sería entregada. Junto con dicha comunicación, Wayne acompañó una factura ascendente a $8,517.62 relacionada con los gastos incurridos en la reparación de la lancha. En algún momento después de esa fecha, la lancha Santimara se hundió.

Así las cosas, el 27 de enero de 1992 Cabán presentó una demanda contra Wayne en la que alegó que éste había incumplido con el pago de los cánones de arrendamiento acordados, que le adeudaba la suma de $22,500.00 dólares hasta el 2 de diciembre de 1991, que la pérdida de la embarcación se estimaba en $11,000.00 y que había sufrido daños por $15,000.00.

Por su parte, Wayne admitió el otorgamiento del contrato, negó las restantes alegaciones de la demanda, señaló que el hundimiento de la lancha se debió a la propia negligencia de Cabán, y presentó, a su vez, una reconvención en la que reclamó el pago de $8,517.62 por los gastos incurridos en la reparación de la lancha. Cabán adujo que las reparaciones realizadas por Wayne a la lancha fueron hechas sin su autorización y que, según el contrato, éste venía obligado a repararla.

Luego de los trámites procesales de rigor, se celebró el juicio en su fondo del caso. Por la parte demandante declaró únicamente el propio Cabán. Por la parte demandada declararon Francisco Sampoll, Carlos Rodríguez Ramos, Eddie William Rivera, Juan Laracuente Seda, y Wayne Watson.

Las partes estipularon la presentación del contrato de alquiler de la embarcación Santimara y de la carta enviada por Wayne a Cabán el 23 de julio de 1991 en la que se le acusa recibo del marbete de la lancha y el certificado de numeración y se le indica que el marbete original había sido adherido a la Santimara.

Wayne presentó, además, la siguiente prueba documental, la cual fue admitida por el tribunal:

*"(f) documento del cual surge que durante el período del 1 al 19 de abril de 1991 la lancha fue utilizada doce (12) días y que durante ese transcurso de tiempo se le hicieron reparaciones a la lancha ascendentes a $2,769.02, por lo que Cabán quedó debiéndole a Wayne la cantidad de $1,869.02.*

*(g) diversas facturas emitidas por Ponce Diesel Power, Inc., empresa especialista en motores diesel y equipo pesado, relacionadas con las reparaciones realizadas en la lancha Santimara."*

El 27 de enero de 1997 el tribunal *a quo* finalmente dictó la sentencia que nos ocupa mediante la

cual declaró con lugar la demanda instada por Cabán.

El tribunal recurrido arribó a las determinaciones de hechos que resumimos a continuación:

*"1. Cabán adquirió la lancha Santimara en octubre de 1990 por la suma de $9,000.00 e invirtió $2,000.00 dólares en mejoras.*

*2. Al momento de suscribir el contrato la lancha Santimara se utilizaba para la pesca y vendía el producto de ésta de manera ambulante.*

*3. Cabán era dueño además de otra embarcación que también utilizaba para la pesca dos veces en semana.*

*4. Alrededor del mes de febrero de 1991 Cabán y Wayne firmaron el contrato de alquiler de la lancha Santimara.*

*5. Al momento en que Cabán entregó a Wayne la lancha, ésta se encontraba en perfectas condiciones.*

*6. Entre los meses de febrero a abril de 1991, Wayne le pagó a Cabán apróximadamente $900.00 dólares por el uso de la lancha, luego de descontarle el costo de las reparaciones realizadas a la embarcación.*

*7. La Santimara se hundió en algún momento en el año 1991 mientras estaba en la posesión de Wayne.*

*8. Las partes acordaron en el contrato que la lancha se utilizaría diariamente para ir a Caja de Muertos.*

*9. Que Wayne utilizó la lancha Santimara los cinco días a la semana a razón de $75.00 diarios, o sea, $375.00 dólares por semana excluyendo los sábados y domingos y que Cabán tuvo pérdidas estimadas en $15,000.00 por el hundimiento de la lancha al dejar de recibir ingresos provenientes de la pesca.* ■

*10. Que como no se sabe con certeza en qué fecha se hundió la lancha, concluye que el 30 de septiembre de 1991 fue la fecha en que terminó el alquiler de la embarcación, toda vez que de la carta enviada por Wayne a Cabán en esa misma fecha se desprende que todavía el primero se encontraba en posesión de la misma.*

*11. Que del 4 de febrero de 1991 al 30 de septiembre transcurrieron 34 semanas que a razón de $375.00 por semana, totalizan la cantidad de $12,750.00 por concepto de alquiler adeudado a Cabán. Además, se le adeuda a Cabán la cantidad de $11,000.00 por la pérdida de la lancha y $15,000.00 por la pérdida de ingresos sufridos por el demandante como consecuencia de la pérdida de la embarcación."*

De conformidad con dichas determinaciones de hechos, el tribunal *a quo* concluyó, en lo pertinente, lo siguiente:

*"...en el caso de autos existe una obligación contractual de parte del arrendatario de indemnizar por los daños y perjuicios sufridos en la propiedad si la pérdida se debió a su culpa o negligencia, el pago de los cánones dejados de recibir antes de la pérdida y el pago de la pérdida de la embarcación, ya que se hundió por su negligencia".*

Concluyó, además, que Wayne efectivamente probó que realizó arreglos y reparaciones a la lancha ascendentes a $8,517.62, por lo que declaró con lugar la reconvención presentada por éste.

A tenor con lo anterior, el Tribunal de Primera Instancia ordenó a Wayne a que le pagara a Cabán la suma de $48,500.00 ■ que se desglosan de la siguiente manera: (a) $12,750.00 por concepto de los

cánones dejados de percibir desde el 4 de febrero de 1991 hasta el 30 de septiembre de ese mismo año computados a razón de $75.00 dólares diarios por cinco días a la semana; (b) $11,000.00 por concepto del valor de la embarcación hundida; (c) 15,000.00 por pérdida de ingresos; y (d) $1,500.00 por concepto de honorarios de abogado. Wayne presentó moción de reconsideración y de solicitud de determinaciones de hechos adicionales, la cual fue declarada sin lugar.

Inconforme con tal dictamen, Wayne acude ante nos y señala, en síntesis, que erró el tribunal recurrido al concluir: (a) que Wayne tenía la posesión de la lancha cuando se hundió; (b) que la lancha se hundió por la negligencia de Wayne; (c) que la lancha fue utilizada por Wayne desde el 4 de febrero de 1991 hasta el 30 de septiembre de ese mismo año y al no descontar del cómputo correspondiente los pagos realizados por Wayne; (d) que Cabán utilizaba la lancha en cuestión para la pesca y en base a ello concederle $15,000.00 dólares en daños por la pérdida de ingresos; (d) que la compensación total ascendía a $48,500.00; y (e) al imponer honorarios de abogado por temeridad.

Luego de numerosos trámites procesales relacionados con el perfeccionamiento del recurso, el Tribunal de Primera Instancia aprobó la exposición narrativa de la prueba presentada por la parte apelante con las enmiendas levantadas por la parte apelada. Le concedimos término a la parte apelada para que presentara el alegato correspondiente. Dicha parte ha comparecido. Nos encontramos en posición de resolver.

## II

La adecuada adjudicación de la controversia de autos requiere que examinemos las disposiciones de ley relativas al contrato de arrendamiento.

En el arrendamiento de cosas una de las partes se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y precio cierto. Artículo 1433 del Código Civil, 31 L.P.R.A. sec. 4012. El arrendador está obligado a entregar la cosa objeto del contrato al arrendatario, a hacer en ella las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada, a mantener al arrendatario en el uso pacífico del arrendamiento, y a suscribir y entregar al arrendatario un recibo por cada pago hecho por éste. Artículo 1444 del Código Civil, 31 L.P.R.A. sec. 4051.

Por su parte, el arrendatario viene obligado a pagar el precio del arrendamiento en los términos convenidos, a usar de la cosa arrendada como un diligente padre de familia, y a pagar los gastos que ocasione la escritura del contrato. Artículo 1445 del Código Civil, 31 L.P.R.A. sec. 4052.

Según las disposiciones antes transcritas es al arrendador a quien le corresponde la facultad de efectuar las reparaciones necesarias a la cosa objeto del contrato para que pueda utilizarse para el fin propuesto. No obstante, la doctrina y la jurisprudencia han reconocido que el arrendatario puede verificar por sí las reparaciones, especialmente si media el consentimiento del arrendador, y de esta manera obtiene un derecho contra el dueño para pedir el resarcimiento de sus costos. *Marín v. Montijo,* 109 D.P.R. 268, 276 (1979). (Citas omitidas.)

Si el arrendador o el arrendatario no cumplieran con sus obligaciones, podrán pedir la rescisión del contrato y daños y perjuicios, o sólo esto último, dejando el contrato subsistente. Art. 1446 del Código Civil, 31 L.P.R.A. sec. 4053.

El Art. 1451 del Código Civil, 31 L.P.R.A. sec. 4058, establece la obligación del arrendatario de devolver la propiedad objeto del negocio, al concluir el mismo, *"tal y como la recibió, salvo lo que hubiere perecido o se hubiera menoscabado por el tiempo o por causa inevitable".*

La ley presume que la propiedad ha sido recibida en buen estado, Artículo 1452, 31 L.P.R.A. sec. 4059. El Art. 1453, 31 L.P.R.A. sec. 4060, establece que el arrendatario será responsable del *"deterioro o pérdida que tuviere la cosa arrendada, a no ser que pruebe haberse ocasionado sin culpa suya."* Conforme al precepto citado, una vez establecida la pérdida de la cosa, existe la presunción de que la misma se ha debido a la negligencia del arrendatario y le corresponde el peso a éste para demostrar que no fue negligente. *Castro Anguita v. Figueroa,* 103 D.P.R. 847 (1975); *Caminero v. Cobián Theatres,* 81 D.P.R. 960 (1960).

Wayne señala que erró el tribunal apelado al concluir que la lancha estaba en su posesión al momento de la pérdida y que ésta.se hundió debido a su negligencia. En lo que respecta al señalamiento de error relativo a la posesión de la lancha, tenemos que concluir, al igual que lo hizo el tribunal *a quo*, que la lancha estaba en posesión de Wayne al momento en que se hundió. De la carta del 30 de septiembre de 1991 se desprende que Wayne le estaba arreglando la transmisión a la lancha y que tan pronto estuviese lista se la entregarían a Cabán. En algún momento con posterioridad a esta fecha, la lancha se hundió. Nadie pudo precisar cuándo fue que se hundió ni la razón específica del hundimiento. Es razonable concluir, entonces, que la lancha, aun cuando estaba siendo reparada, estaba en la posesión de Wayne.

Por otro lado, Wayne aduce que la pérdida de la lancha se debió a los numerosos desperfectos mecánicos que ésta tenía desde antes del comienzo del arrendamiento. Como hemos expuesto, nuestro Código Civil establece la presunción de que la cosa fue recibida en buen estado y que la pérdida o deterioro de la cosa es atribuible a la negligencia del arrendatario. Le corresponde, entonces, al arrendatario rebatir esas presunciones y presentar prueba que demuestre que la pérdida no se debió a su negligencia. En el caso de autos, el tribunal sentenciador concluyó que el arrendatario, en este caso Wayne, no rebatió dicha presunción. Nosotros no contamos con elementos de juicio suficientes que nos permitan variar tal determinación. Cabán testificó que la lancha se hundió debido a la negligencia de Wayne porque al sacarle la transmisión para arreglarla *"no le sellaron el fondo"*. Wayne no contradijo tal aseveración. La prueba presentada por Wayne era indicativa de que la lancha sufrió numerosos desperfectos mecánicos. No obstante, Wayne no presentó prueba alguna para demostrar cuáles fueron las razones específicas para que la lancha se hundiera.

Es norma reiterada en nuestra jurisdicción que los tribunales apelativos no intervendrán con la apreciación que de la prueba desfilada haya hecho el Tribunal de Primera Instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Orta v. Padilla,* ___ D.P.R. ___ (1995), **95 J.T.S. 21,** a la pág. 668; *Rodríguez v. Machado,* ___ D.P.R. ___ (1994), **94 J.T.S. 82,** a la pág. 12,008; *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8, 14 (1987); *Valencia Ex-Parte,* 116 D.P.R. 909, 912 (1986); Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.2.

Las partes estipularon que la lancha tenía un valor de $11,000.00. Toda vez que hemos determinado que la pérdida de la lancha se debió a la negligencia desplegada por Wayne, confirmamos la parte de la sentencia apelada mediante la cual se le ordenó a éste a satisfacer a Cabán dicha suma por concepto del valor de la embarcación hundida.

### III

Establecido lo anterior, examinemos a continuación los señalamientos de error relacionados con la imposición de la partida de $12,750.00 por concepto de los cánones dejados de percibir y de $15,000.00 por la pérdida de ingresos provenientes de la pesca.

Entendemos que el tribunal *a quo* erró al imponer estas partidas. En primer lugar, la prueba presentada y creída por el tribunal sentenciador demostró que durante los meses de febrero (fecha en que alegadamente comenzó el arrendamiento) a abril de 1991 Wayne pagó los cánones de arrendamiento correspondientes y descontó de dicho cómputo el costo de las reparaciones realizadas a la lancha. Cabán testificó que durante ese período recibió alrededor de $900.00 a $950.00 dólares de parte de Wayne. Los documentos obrantes en el expediente reflejan que dichos pagos cubrían hasta la fecha del 25 de abril de 1991. Resulta obvio que el tribunal sentenciador tenía que excluir ese período (alrededor de doce (12) semanas) del cómputo relacionado con la partida relativa a los cánones dejados de percibir. Por ello, el cómputo, de proceder, debía hacerse en base a veintidós (22) semanas a razón de $75.00 dólares diarios por cinco días a la semana, cantidad que ascendía a $8,250.00.

No obstante, entendemos que tampoco procedía el pago de dicha suma ($8,250.00) por concepto de los cánones dejados de percibir. El tribunal *a quo* concluyó que la lancha fue utilizada por Wayne desde el mes de febrero hasta el 30 de septiembre de 1991 basándose principalmente en el hecho de que Wayne se había quedado con el marbete original de la lancha y se lo había adherido a ésta. [3] Si bien este hecho demuestra que Wayne tenía la posesión de la lancha, no podemos otorgarle el alcance concedido por el tribunal apelado. La determinación del tribunal *a quo* de computar los cánones adeudados hasta el 30 de septiembre de 1991 no puede sostenerse, habida cuenta que existe prueba

demostrativa de que la lancha estaba dañada.

Wayne presentó prueba clara y convincente de que la lancha no fue utilizada desde el 25 de abril de 1991. El Sr. Francisco Sampoll Pérez, supervisor de Wayne y persona encargada del mantenimiento del equipo que se utiliza en las operaciones de la corporación, declaró que le entregaron la lancha a Cabán cerca del día de las madres del año 1991 y que le notificaron que no la utilizarían más por lo mucho que se dañaba y porque la transmisión no servía. Por su parte, Wayne Watson, presidente de la corporación Wayne Marine, Inc., testificó que la lancha la utilizaron apróximadamente tres meses, que tuvieron que hacerle numerosas reparaciones a ésta y que el último día que se usó fue el 25 de abril de 1991. Esta prueba no fue controvertida por Cabán. Agréguese a lo anterior, el hecho de que el propio juez sentenciador concluyó que Wayne dejó demostrado que le hizo arreglos y reparaciones a la lancha por la cantidad de $8,517.62 y, por ello, declaró con lugar la reconvención presentada por éste. Este hecho constituye la mejor prueba de que efectivamente la lancha estaba dañada y no estaba siendo utilizada por Wayne para los fines objeto del arrendamiento.

El contrato de arrendamiento firmado por las partes claramente especificaba que Wayne le pagaría a Cabán $75.00 dólares diarios por el uso de la embarcación. Resulta imperativo concluir que, si la lancha no se usó desde el 25 de abril de 1991, Wayne no le adeuda canon alguno a Cabán. ■

Aunque de ordinario no intervenimos con la apreciación de la prueba que realizan los jueces de primera instancia, un examen de la totalidad de la evidencia presentada en este caso nos mueve a concluir que el tribunal apelado incurrió en error manifiesto, ya que estamos convencidos que la lancha Santimara, aun cuando estaba en posesión de Wayne, no estaba siendo utilizada por éste desde el 25 de abril de 1991.

En segundo lugar, y en relación con la partida de $15,000.00 dólares por los ingresos dejados de percibir por Cabán provenientes de la pesca, entendemos que tal conclusión carece totalmente de apoyo en la prueba que desfiló ante el tribunal sentenciador y, por tanto, debe ser eliminada. Hemos examinado detenidamente el expediente ante nuestra consideración y la exposición narrativa de la prueba y no hemos hallado prueba alguna que justifique la concesión de daños por los ingresos dejados de percibir por Cabán por la alegada pérdida de uso de la lancha Santimara para la pesca. Apoya nuestra contención el hecho de que Cabán sólo podía utilizar la lancha Santimara para la pesca dos días a la semana toda vez que éste operaba su negocio de barbería de martes a sábado y que durante la semana la lancha estaba arrendada a Wayne. Además, Cabán testificó que tenía otra lancha que utilizaba para la pesca y que lo que pescaba lo vendía de *"manera ambulante"*.

De dichos documentos también surge que durante el lunes 22 de abril de 1991 la lancha se utilizó pero dejó de funcionar y hubo que dejarla en Caja de Muertos hasta dos días más tarde y que el jueves 25 de abril la lancha fue utilizada nuevamente pero se volvió a dañar teniendo que ser remolcada.

Por tanto, entendemos que Wayne tampoco le adeuda a Cabán los cánones correspondientes a esa semana.

Para sustentar su alegación de que dejó de ganarse $15,000.00 dólares al no poder dedicar la lancha Santimara para la pesca.

Por lo anterior, estimamos que esta cuantía otorgada por el tribunal *a quo* no encuentra apoyo en la prueba desfilada. Los ingresos dejados de percibir por Cabán constituirían un daño compensable. No obstante, para que éstos fuesen otorgados era necesario que se probara su cuantía con certeza y precisión. Véase, *Seda v. Miranda Hnos. & Co.,* 88 D.P.R. 355, 362 (1963). En este caso la parte demandante (Cabán) no cumplió con este requisito.

## IV

Por último, nos toca resolver si erró el tribunal sentenciador al imponerle a Wayne el pago de $1,500.00 por concepto de los honorarios de abogado. Este asunto está regulado por la Regla 44(d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44, la cual dispone que:

*"En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal*

*deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta."*

El concepto *"temeridad"* ha sido ampliamente definido por el Tribunal Supremo de Puerto Rico. En términos generales se considerará temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. *Torres Ortiz v. E.L.A.,* ___ D.P.R. ___ (1994), **94 J.T.S. 100**; *Elba A.B.M. v. U.P.R.,* 125 D.P.R. 299 (1990); *Hawayek v. A.F.F.,* 123 D.P.R. 526 (1989); *Colondres Vélez v. Bayrón Vélez,* 114 D.P.R. 833 (1983). El propósito fundamental de la imposición de honorarios de abogado es penalizar o sancionar a aquellas partes que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovistas de fundamento, obligan a otra parte a asumir y sufrir las molestias, gastos, trabajos y consecuencia de un litigio innecesario. *Sharon Marie Miranda y otros v. E.L.A.,* ___ D.P.R. ___ (1994), **94 J.T.S. 152.**

El tribunal *a quo* en este caso no tuvo ante sí evidencia demostrativa de que la parte demandada y aquí apelante haya actuado de forma temeraria antes o después de haberse iniciado el pleito. Como cuestión de hecho, la eliminación de la cuantía correspondiente a los cánones que le adeudaba Wayne a Cabán así como la revocación de la cuestión relativa a la imposición de $15,000.00 dólares en daños constituyen la mejor prueba de que Wayne no actuó de manera temeraria en la litigación de este pleito. Por ello, erró al imponer el pago por concepto de honorarios de abogado.

## V
Por los fundamentos expuestos en esta opinión, confirmamos la parte de la sentencia apelada mediante la cual se le ordenó a Wayne a satisfacer la suma de $11,000.00 por concepto del valor de la embarcación hundida y mediante la cual se declaró con lugar la reconvención presentada por éste. Revocamos la parte de la sentencia mediante la cual se le ordenó a Wayne el pago de $12,750.00 por concepto de los cánones dejados de percibir, el pago de $15,000.00 por concepto de los ingresos dejados de percibir por Cabán, y se le impuso el pago de honorarios de abogado. [5]

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 98 DTA 204

1. El tribunal basó principalmente su determinación de que la lancha estaba siendo utilizada por Wayne en lo siguiente:

*"Surgió, además, conforme al Exhibit II, por estipulación de las partes, otra afirmación de la parte demandada de fecha de 23 de julio de 1991 que el nuevo marbete se lo habían adherido a la lancha Santimara, por lo que muy bien puede concluirse que la misma, además de continuar aún en posesión de la parte demandada, se estaba usando porque si no la usaban, como ésta alegaba, ¿por qué entonces le adhirieron el marbete sino era precisamente porque sí la estaban usando?"* Véase, determinación de hechos núm. 10 de la sentencia apelada.

2. Resulta obvio que el tribunal *a quo* se equivocó al sumar las partidas que se desglosan en la sentencia recurrida, toda vez que la suma de las mismas ascienden a un total de $38,750.00, sin contar la suma correspondiente a honorarios de abogado e intereses.

3. Véase, nota al calce núm. 1.

4. De los documentos obrantes en nuestro expediente relacionados con los pagos que Wayne le hacía a Cabán se desprende que el primero pagó hasta el 19 de abril de 1991. Habría entonces que preguntarse ¿qué pasó con el pago correspondiente al período del 19 al 25 de abril de 1991?

**5.** De lo anteriormente expuesto se colige que Wayne tiene que pagarle a Cabán $11,000.00 por el valor de la Santimara, más los intereses legales computados desde que se dictó la sentencia. Por su parte, Cabán le adeuda a Wayne la suma de $8,517.62 por concepto de las reparaciones que éste hiciera en la lancha Santimara, más los intereses legales computados desde que se dictó la sentencia.