Negrón Soto, Juez Ponente
*726 TEXTO COMPLETO DE LA SENTENCIA
Iván W. Oliveras Fraticelli, en lo sucesivo peticionario, comparece ante nos mediante este certiorari solicitando que revoquemos la Resolución emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce, el 26 de abril de 1999 y notificada el día 29 siguiente, mediante la cual se le denegó una solicitud de nulidad de subasta. Sostiene que es el dueño del predio de terreno que fue embargado y subastado a instancia de Narciso López Rivera, en adelante el demandante, sin existir deuda alguna por la cual responder ni seguirse el debido procedimiento de ley.
Mediante Resolución del 18 de mayo de 1999, solicitamos los autos originales de todos los expedientes de los pleitos en instancia relacionados con este recurso. Examinados los mismos y estudiadas las comparecencias escritas de las partes, estamos en disposición de resolver.
Por los fundamentos que se exponen a continuación, se expide el auto solicitado y se revoca la Resolución recurrida. Consideremos la situación fáctica ante nos.
I
El demandante presentó una demanda en cobro de dinero el 19 de octubre de 1990 ante el Tribunal Superior de Puerto Rico, Sala de Ponce, contra “IVAN W. OLIVERAS FRATICELLI, JANE DOE, esposa cuyo nombre se desconoce, y la Sociedad de Bienes Gananciales por ellos constituida”. Reclamó el pago de diecisiete mil doscientos cincuenta dólares ($17,250.00), por concepto de un préstamo no pagado, más la suma de mil setecientos dólares ($1,700.00) por honorarios de abogado y las costas. Esta demanda fue posteriormente enmendada para incluir como nuevos demandados a los padres de Iván W. Oliveras Fraticelli, a saber: Iván D. Oliveras Antonmattei, Ana Elsa Fraticelli y la sociedad legal de gananciales por ellos constituida. Aunque mencionó en el epígrafe sólo estos nombres, el demandante solicitó la corrección del epígrafe para incluir a todos los demandados. Ello fue autorizado por el Tribunal recurrido. Además, el demandante sustituyó el nombre de Jane Doe por el de Lizy Santiago e hizo constar que Ana Elba Fraticelli era conocida como Ana Elsa Fraticelli para que el procedimiento continuara bajo ambos nombres. Todos los demandados fueron emplazados y no comparecieron, habiéndosele anotado previamente la rebeldía solamente a la co-demandada Ana Elba Fraticelli. Celebrada la vista en rebeldía, el 31 de mayo de 1991, el Foro de instancia emitió Sentencia ese mismo día. Declaró con lugar la demanda sólo contra Iván D. Oliveras Antonmattei condenándolo a pagar la suma adeudada por concepto del préstamo y las costas. Expresamente, declaró sin lugar la demanda contra los demás co-demandados. Esta sentencia sólo se notificó al demandante y *727 a Iván M. Oliveras, Box 1731, Yauco, P.R. 00768. Así las cosas, el demandante solicitó la ejecución de la sentencia y la venta en pública subasta del inmueble que se describe a continuación:

“Solarde Novecientos Punto Cero Dos Metros Cuadrados (900.002 m.c.) aproximadamente, localizado en la Carretera 371, Kilómetro 1.2 en Yauco, Puerto Rico, en lindes por el Norte, Sur y Oeste con terrenos de la Sucesión de Gabriel Oliveras y por el Este con la Carretera Estatal número Trescientos Setenta y Uno (371). Enclava en dicho solar una estructura de concreto armado, levantada en columnas, dedicada a vivienda, con techo en cemento.

Igualmente hay varias estructuras de cemento, techadas de zinc, donde operan un taller de mecánica.

Dicha propiedad no se halla inscrita en el Registro de la Propiedad de Puerto Rico. ”

Esta moción fue declarada con lugar y se fijó el tipo mínimo para la celebración de la primera subasta en diecisiete mil doscientos cincuenta dólares ($17,250.00), que era el monto de la deuda, según determinada por sentencia. Esta le fue adjudicada al demandante, único licitador en la misma, por esa suma. De la declaración jurada suscrita por el alguacil Jesús A. Irizarry Vázquez, quien celebró la subasta, surge que éste publicó copia de los edictos anunciando su celebración en los tablones de edictos del Centro Judicial de Ponce, de la Colecturía de Rentas Internas de Ponce y de la Alcaldía de ese Municipio. Además, por residir el demandado, Iván D. Oliveras Fraticelli, en Yauco, se publicó copia de los mismos solamente en el tablón de edictos de la Escuela Luis Muñoz Marín de ese mismo pueblo.
El 17 de marzo de 1992, el Tribunal Superior de Puerto Rico, Sala de Ponce, emitió un mandamiento de ejecución. En moción jurada del 5 de junio siguiente, el demandado Iván D. Oliveras Antonmattei, en lo sucesivo Iván D. padre, alegó que Iván W. Oliveras Fraticelli, en adelante Iván W. hijo, había sido notificado el 21 de mayo de 1992 con una orden para que entregara su propiedad (la de Iván W. hijo) cuando éste ya había pagado la deuda objeto del embargo. Además, señaló que él (Iván D. padre) no había sido notificado de la sentencia en rebeldía emitida el 31 de mayo de 1991 y que se había enterado por la copia de la misma que recibió Iván W. hijo. Dicha moción fue declarada sin lugar mediante Resolución de 16 de junio de 1992, notificada el 23 de junio siguiente, aduciendo que la sentencia dictada el 31 de mayo de 1991 era final y firme y que lo que se estaba tramitando era su ejecución.
El 25 de junio de 1992, el demandante solicitó que se ordenara al alguacil romper las puertas de la propiedad subastada, ya que Iván D. padre y sus otros familiares impedían el acceso a la misma, según le constaba al alguacil, Francisco Feliciano Alcántara. El Tribunal ordenó a Iván D. padre, que compareciera a una vista el 10 de julio siguiente. En moción titulada “Informativa” del 2 de julio anterior, en la que solicitó que se "... deje sin efecto la sentencia... ” dictada o en la alternativa que se paralizaran los procedimientos en lo que se realizaba la investigación solicitada, compareció por primera vez Iván W. hijo e incluyó los siguientes documentos:

“1. Certificación de Escritura a favor de Librado Oliveras Caraballo e hijos donde está anclada la propiedad que se ha solicitado la entrega de la propiedad por el Tribunal de Ponce. Creo que estos echos [sic] han sido ilegales sobre la ejecución de esa propiedad que no tiene Registro de Planificación.

2. Querella de la Policía de Yauco del día 5 de junio a la una de la tarde del 1992 y núm. de querella es 92-3-079-02920 con núm. de informe 560. Sobre los echos [sic] que se hicieron.

3. Copia de carta al Secretario de Justicia.

*728
4. Se va hacer directo querella a la Comisión de Derechos Civiles.

5. Copia también al Secretario de Hacienda.

6. Se está sometiendo denuncia en el Cuartel de la Policía de Yauco sobre la violación de ley (LEY DE USURA) sobre las personas Narciso López Rivera y Elizabeth Quiñones Rodríguez. ”

A esa audiencia, comparecieron el demandante con su abogado, Iván W. hijo e Iván D. padre. A solicitud de estos últimos se suspendió la misma para el 3 de septiembre siguiente, de manera que ellos pudieran contratar una representación legal.
El 14 de julio siguiente, Iván W. hijo presentó un segundo escrito, titulado 'MOCION DE DESESTIMACION, ETC.'. Alegó que en ese pleito (CS-90-2729) se había emplazado erróneamente al demandado, ya que la demanda, copia de la demanda perteneciente a Iván D. padre, se la entregaron a él y de que Iván D. padre no le debía suma alguna al demandante. No se refirió a ese escrito a la moción que había presentado anteriormente Iván D. padre ni a lo resuelto por el Foro de instancia. El Tribunal recurrido entendió que dicha moción era académica, ya que había una vista señalada. El 6 de agosto de 1992, aun cuando en el caso había una sentencia final y firme que estaba pendiente de la celebración de una vista para dejarla sin efecto, Iván D. padre presentó una reconvención. Alegó que como se le había emplazado erróneamente y él no le adeudaba suma alguna al demandante, éste le era responsable por los sufrimientos y angustias mentales que le habían causado sus actuaciones ilegales los cuales valoraba en cien mil dólares ($100,000). 
El 28 de agosto de 1992, también el demandado, Iván D. padre, representado por primera vez por un abogado, licenciado Edgardo Delgado Eras, presentó otra moción al amparo de la Regla 49.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, sosteniendo que la sentencia del 31 de mayo de 1991 no le había sido notificada, que la suma adeudada por concepto de un préstamo era responsabilidad de Iván W. hijo y no de él y que se estaba ante un fraude cometido ante el Tribunal. El demandante se opuso. Sometió copia de una declaración jurada prestada el 12 de marzo de 1991 por él, de donde surge que:
"... con tal propósito, el 30 de agosto de 1990, don Iván W. Oliveras Fraticelli expidió cheque a la orden del aquí declarante por la suma de $17,250.00, cheque éste que aún permanece en poder del aquí declarante porque nunca ha podido cobrar el mismo. ”
La representación legal de Iván D. padre renunció el 7 de diciembre siguiente ante las diferencias irreconciliables surgidas entre ellos. Luego de que se pospusiera varias veces la vista señalada para que los demandados comparecieran representados por abogado, finalmente se celebró la misma el 23 de febrero de 1983. Iván D. padre compareció y alegó que no estaba preparado porque no había conseguido representación legal. El Tribunal celebró la vista. Iván D. padre no sometió prueba. Iván W. hijo no compareció. El Tribunal Superior de Puerto Rico, Sala de Ponce, mediante Resolución del 23 de febrero de 1993, notificada el 10 de marzo siguiente, denegó dicha moción al amparo de la Regla 49.2 de las de Procedimiento civil, Ibid. 
El 3 de mayo de 1993, el Foro de instancia le ordenó al peticionario, Iván W. hijo, entregar la propiedad subastada. Esta orden sólo fue notificada al demandante y al “Sr. Iván Oliveras” el 7 de mayo siguiente.
El 8 de noviembre de 1993, Iván D. padre, representado por la licenciada Sheila A. Acevedo Alvarez, presentó otra moción al amparo de la Regla 49;2 de las de Procedimiento Civil, Ibid, donde volvió a alegar que la sentencia del 31 de mayo de 1991 no le había sido notificada; que nunca había realizado préstamo alguno con el demandante; que la relación prestataria era entre el demandante y el aquí peticionario, Iván W. hijo, y *729 que se trataba de un préstamo ilegal con intereses usurarios. Además, sostuvo que el demandante había prevalecido ante el Tribunal Superior de Puerto Rico mediante actuaciones fraudulentas, sin especificar cuáles eran. El demandante se opuso.
El Foro recurrido autorizó a dicha abogada a escuchar la grabación de las vistas celebradas anteriormente sobre dichos planteamientos y pautó una audiencia para el 14 de enero de 1994. Luego de pospuesta esa vista para otra fecha, la misma se celebró sin la comparecencia de la abogada de Iván D. padre, quien llegó más tarde. No obstante, ésta compareció y sometió prueba documental por escrito. El 29 de marzo de 1994, el Tribunal señaló otra vista con la condición de que Iván D. padre consignara doscientos dólares ($200) como sanción a favor de la demandante. Sin haberse depositado esa sanción, dicha letrada renunció a la representación legal de Iván D. padre y el Tribunal le concedió a éste una última oportunidad para conseguir otro abogado. Este depositó los doscientos dólares ($200) el 30 de mayo de 1994, pero no contrató una nueva representación legal en el término de veinte (20) días que le había concedido ese Foro. En su lugar, sometió una moción incluyendo diversas querellas presentadas, entre las cuales estaba una jurada por él que había enviado al Tribunal Supremo el 22 de junio de 1994. También, incluyó una declaración jurada prestada el 28 de junio de 1994 por Iván W. hijo, en la cual éste indicaba, en el apartado 2, que era propietario de la siguiente finca:

“URBANA: predio de terreno compuesto de ochocientos treinta y tres punto ochocientos cinco (833.805 m/2) metros cuadrados, sito en el Barrio Almácigo Bajo de Yauco, Puerto Rico, Colinda por el NORTE, con camino vecinal; al SUR, con la Barriada Lluveras; al ESTE con faja dedicada a uso público y carretera [sic] trescientos setenta y uno, (371), y al OESTE con José Elias Oliveras. Enclava una estructura dedicada a vivienda. ”

En adición, sometió copia de la escritura pública número treinta y uno (31) de compraventa otorgada el 10 de octubre de 1998 ante el notario público Rolando Emmanuelli Sepúlveda, en donde Doña Elisa Rodríguez le vendía a él el predio de terreno objeto de esta controversia.
El 29 de junio de 1994, Iván D. padre volvió por derecho propio a solicitar la anulación de la sentencia dictada, la cual fue acompañada de una declaración jurada firmada por él, la cual, en lo pertinente, dispone lo siguiente:

B-...En esta declaración jurada ante un notario público, mi hijo Iván W. Oliveras hace constar que la propiedad que se subastó el día 20 de febrero de 1992 por un alguacil y en el Hon. Tribunal de Ponce, son de su propiedad y que las misma [sic] están debidamente registradas, mejor dicho certificadas por escritura pública número 31, sobre Compraventa ante el Ledo. Rolando Emmanuelli Sepúlveda, el día 10 de octubre de 1985.

C- Yo, Iván D. Oliveras Antonmattei, deseo hacer constar que las aseveraciones que hace el señor Alguacil del Tribunal Superior de Ponce, sobre los edictos posteados en las distintas localidades que él menciona no son correctas; toda vez que nunca se me notificó para yo estar presente en la celebración de la subasta y nunca recibí documento alguno. De habérseme notificado, yo hubiese estado presente para rebatir este amapucho que se ha cometido en contra de mi persona. Nótese que solamente estaban presentes en la llamada subasta el licenciado Zayas y el Sr. Narciso López Rivera. Véase además que esta subasta fue a la ligera; comenzó a las 10:30 AM. y terminó a las 10:40 AM. No dieron oportunidad para nada, ni hubo llamadas ni nada; por eso pongo en duda la celebración de este acto. Hasta las dimensiones y las colindanciás 
*730
de esta propiedad están incorrectas... ”.

El Foro recurrido señaló una vista para considerar dicha moción, la cual file pospuesta en varias ocasiones. Específicamente, el 30 de septiembre de 1994 fue transferida porque Iván D. padre había contratado los servicios de un tercer abogado, licenciado Juan T. Peñagarícano. Sin embargo, éste renunció prontamente, el 16 de noviembre siguiente. El Tribunal aceptó dicha renuncia y le concedió a Iván D. padre hasta el día 9 de diciembre de 1994 para que consiguiera los servicios de otro abogado, pero éste no lo hizo. A esta vista, cumpliendo con una solicitud del Colegio de Abogados, compareció el licenciado Harry Ramírez Maldonado, quien solicitó término para examinar el expediente. Posteriormente, éste declinó aceptar representar a Iván D. padre.
El 30 de noviembre de 1994, el demandado Iván D. padre volvió a presentar por derecho propio otra moción solicitando que se dejara sin efecto dicha sentencia. En escritos del 9 de febrero y del 20 de julio de 1995, Iván D. padre repitió esa solicitud, planteando básicamente lo mismo que en sus anteriores comparecencias. Todas estas mociones fueron señaladas para el 20 de julio de 1995. Mediante Resolución del 28 de julio de 1995, notificada el 3 de agosto siguiente, al denegar lo allí solicitado, el Foro de instancia por voz de la Jueza, señora Elba Rosa Rodríguez Fuentes, determinó correctamente que Iván D. padre no podía volver a plantear lo relacionado con la validez de la sentencia dictada en su contra, la cual era final y firme. Entendió que lo único que en esos momentos estaba pendiente era lo relativo a la titularidad de la propiedad embargada, o sea, si ésta le pertenecía a él o a Iván W. hijo, contra quien no se había dictado sentencia en cobro de deuda. Concluyó señalando que no iba a entrar a discutir ese asunto hasta que Iván D. padre estuviera asistido de abogadp, ya que le era muy difícil entender sus planteamientos en la forma en que los hacía. Pautó una vista para el 2 de octubre de 1995 para darle tiempo a que él consiguiera abogado. Es de notar que esta Resolución, notificada el 3 de agosto de 1995, no se le notificó a Iván W. hijo, ni fue apelada.
El 29 de septiembre de 1995, el licenciado Flor Casiano Báez compareció en representación de Iván D. padre alegando, entre otras cosas, los mismos asuntos que antes le habían sido resueltas en su contra. El Tribunal recurrido, por voz del Juez, señor Herman Lugo del Toro, denegó dicha solicitud mediante orden del 17 de noviembre siguiente, luego de celebrada una vista el 2 de octubre de 1995. El 30 de octubre siguiente, el licenciado Flor Casiano Báez renunció a la representación de Iván D. padre, la cual fue aceptada por el Tribunal, por discrepancias irreconciliables entre ellos incluyendo el que se le hacía “... difícil escuchar y entender las posiciones variables que asume el demandado, una vez se asesora en la calle, luego de discutir y acordar la forma y manera en desarrollar sus posibles defensas con el abogado, quien con la mejor intención y de buena fe lo asesora. ”
El 23 de octubre de 1996, el demandado, Iván D. padre, por derecho propio, solicitó la “Resolución Sumaria Sobre Titularidad y Nulidad de Embargo, Subasta y Adjudicación” en la que alegó que la propiedad le pertenecía a su hijo, aquí peticionario, Iván W. hijo. A esos efectos, volvió a presentar copia de la escritura pública número treinta y uno (31) sobre compraventa, Ibid. El demandante se opuso y presentó una moción acompañada de los siguientes documentos, con el propósito de probar que la propiedad subastada pertenecía al demandado, Iván D. padre:

“I. Plano de construcción de la casa en controversia. De este plano surge diáfanamente claro que el dueño de la casa es Iván D. Oliveras Antonmattei.

II. Carta de fecha 27 de enero de 1993, escrita por el demandado, Iván D. Oliveras Antonmattei, al Honorable Secretario de Justicia de Puerto Rico. 

*731
III. Moción radicada en el caso de autos de fecha 20 de mayo de 1993. 

IV. Declaración Jurada de fecha 20 de mayo de 1993 suscrita por el Sr. Iván W. Oliveras Fraticelli bajo afidávit número 7,371 ante el Notario Juan Báez Torres, donde el también co-demandado, Iván W. Oliveras Fraticelli, bajo juramento hace constar que la casa es de su señor padre, Sr. Iván D. Oliveras Antonmattei. 

V. Carta del 1 de diciembre de 1992 suscrita por el Sr. Iván D. Oliveras Antonmattei dirigida a la Honorable Comisión de Derechos Civiles. 

VI. Moción suscrita por la parte demandada de fecha de 30 de junio de 1994 titulada Solicitud Anulación de Sentencia Enmendada. ”

Cumpliendo con una orden del Tribunal de Primera Instancia, Sala Superior de Ponce, el demandante compareció mediante moción y alegó que el demandado, Iván D. padre, era el dueño de la edificación subastada. En atención a ello, expuso que éste había contratado la confección de los planos para hacer la edificación, había obtenido los permisos de la Administración de Reglamentos y Permisos (A.R.P.E.) y el permiso para construir, y que éste siempre ha residido en la misma, siendo el valor de la propiedad uno de doscientos cincuenta mil dólares ($250,000.00). El 23 de enero de 1997, el Tribunal de Primera Instancia, Sala Superior de Ponce, por voz del Juez, señor Herman Lugo del Toro, luego de considerar todas las mociones presentadas por el demandante y por Iván D. padre, emitió una Resolución ordenando el desalojo de la propiedad subastada. 
Inconforme con dicha Resolución, el demandado Iván D. padre solicitó ante el Tribunal de Circuito de Apelaciones, Núm. KLCE-91-005293, la expedición del auto de certiorari y que declarásemos nula e ineficaz la subasta y la orden de desalojo emitida por el Foro de instancia. Este recurso fue desestimado por falta de jurisdicción, mediante Resolución de 27 de agosto de 1998, la cual fue confirmada por el Tribunal Supremo en Resolución del 18 de diciembre siguiente, Núm. CC98-827. Como la orden de desalojo no fue paralizada, la misma fue diligenciada el 30 de abril de 1997. Ese día, las partes, o sea el demandante, Iván W. hijo e Iván D. padre, firmaron un acuerdo estableciendo que la propiedad mueble permanecería en el inmueble hasta el 4 de mayo siguiente, fecha en que de no haberse removido, entonces sería sacado por el señor Narciso Ocasio Cruz, amigo de las partes.
Así las cosas, el 2 de mayo de 1997, Iván W. hijo y su mamá, Ana Elsa Fraticelli, representados por el licenciado Héctor Vargas Díaz, solicitaron la nulidad de la subasta y un remedio expedito. Alegaron que la propiedad no podía ser embargada, ya que su dueño era responsable de la deuda de otra persona y en caso de que la propiedad fuera del demandado, Iván D. padre, y no del aquí peticionario, Iván W. hijo, la misma pertenecería en común pro indiviso a la sociedad de bienes gananciales compuesta por Iván D. Padre y su esposa, Ana Elsa Fraticelli. Posteriormente, el 5 de mayo siguiente, Iván W. hijo y su madre presentaron otra moción sometiendo evidencia adicional sobre la nulidad de la subasta, en la cual expusieron que la propiedad embargada y subastada era parte de otra de mayor cabida cuyo asiento registral era: “Tomo 54, Folio 199, Finca número 2,887, Yauco, Registro de la Propiedad Sección de San Germán”. Esta última moción fue declarada no ha lugar por el Foro de instancia, señalando: “no ha lugar, previa revisión de los autos y del insuficiente documento sometido”. Del Registro de la Propiedad surge que esa finca está inscrita a favor de:

“Librado Olivera y Caraballo la mitad de la finca y la restante mitad a favor de derecho de usufructo correspondiente a LIBRADO OLIVERA y CARABALLO y de JUANA RODRIGUEZ SANTANA, soltera, según la (s) inscripción (es) primera, segunda cuarta y sextafotocopiadasyla misma vigente (s) lo (s) gravámen (es) 
*732
de la inscripción (es) y/o anotación SIGUIENTES: POR SI: TERCERA: Hipoteca sobre el condominio de Librado Olivera Caraballo, a favor del Doctor Gabriel Rigau por $600.00. ”

Obviamente, la escritura de compraventa Núm. 31 de 10 de octubre de 1985 no aparece inscrita en el Registro de la Propiedad.
El 22 de mayo de 1997, el Tribunal de Primera Instancia, Sala Superior de Ponce, a petición de la demandante, nuevamente ordenó el desalojo del demandado Iván D. padre y de todas las personas que viven en la propiedad subastada, la cual fue diligenciada el 17 de junio siguiente. En esa ocasión fue removida toda la propiedad mueble y se le entregó la posesión de todas las inmuebles al demandante. El 25 de marzo de 1999, dicho Foro, a petición del demandante, volvió a ordenar el desalojo de la propiedad a Iván D. padre, a su familia y las personas que estaban allí.
El 15 de abril de 1999, el peticionario Iván W. hijo, representado por su abogado, licenciado Héctor Vargas Díaz, presentó otra moción en solicitud de nulidad de subasta. Alegó que comparecía por primera vez a los únicos efectos de defender su interés propietario. Además, expuso que era dueño del predio subastado, según surgía de la escritura número treinta y uno (31) de 10 de octubre de 1985 ; que el predio embargado era parte de una finca de mayor cabida, la cual todavía se encontraba en proceso de partición para ser segregada, y alegó por primera vez que el procedimiento de embargo había sido uno insuficiente. A esos efectos, Iván W. hijo expuso:
7. Que, adicionalmente expuesto, el procedimiento de embargo es igualmente insuficiente. No existe en el expediente ninguna documentación que acredite el acto mismo del embargo diligenciado por la persona de un alguacil, ni instancia alguna en el Registro de la Propiedad a esos fines. Toca preguntarse ¿Debe el Honorable Tribunal tomar como cierta la frase que señala que no halla el predio inscrito en el Registro de la Propiedad, cuando la esplendente realidad indubitada es que sí lo está? ¿No se provoca con esto una segura evicción? Siendo éste un bien inmueble, ¿Ha mediado aquí alguna escritura pública realizada conforme a la Regla 51.8 (d)? ¿Ha mediado aquí tasación que invierta la sospecha de irregularidad al adjudicarse una propiedad valorada alrededor de $200,000.00por una deuda de $17,000.00.

Al no dudarlo, debe el Honorable Tribunal ejercer su discreción y escudriñar la acción aquí impugnada por tantas [sic] y tan múltiples razonamientos. ”

El 26 de abril de 1999, el Tribunal de Primera Instancia emitió una Resolución por voz del Juez, señor José M. Fernández Luis, declarando no ha lugar la solicitud de nulidad. A esos efectos, el Foro de instancia expresó:

“Resulta de una claridad diáfana que lo planteado el 15 de abril de 1999fue atendido, previamente, en los ocho años en que la demandada ha tratado de impedir que el demandante obtenga el remedio que se le concedió mediante sentencia. La alegada nulidad de la subasta es un asunto expuesto más de una vez. El tribunal no puede volver incesantemente sobre cuestiones litigadas sólo porque las decisiones fueron adversas a una parte. La justicia exige el reposo de las controversias dilucidadas. Los planteamientos adjudicados no pueden reexaminarse. ”

Finalmente, el 4 de mayo de 1999 se emitió otro dictamen de ejecución de sentencia ordenando el desalojo de las partes de la propiedad subastada.
*733 El 10 de mayo de 1999, el peticionario, Iván W. hijo, presentó esta solicitud de certiorari. Alega que el Tribunal de Primera Instancia erró al no permitirle reclamar "... su propiedad a pesar de la evidencia formidable que así lo garantiza. ” Además, solicita que declaremos nula e ineficaz la subasta celebrada. El 28 de mayo de 1999, el demandante-recurrido presentó una moción de desestimación, donde sostiene que este recurso es improcedente y frívolo y que carecemos de jurisdicción para considerarlo, ya que lo planteado había sido adjudicado anteriormente por este Tribunal y ello opera como cosa juzgada. Posteriormente, presentó otro escrito oponiéndose a lo solicitado por el peticionario, sometiendo este recurso.
Discutamos en primer lugar, si tenemos jurisdicción para considerar lo planteado en este Certiorari.
II
La doctrina de cosa juzgada impide que una parte litigue nuevamente cuestiones planteadas y adjudicadas o que lo pudieron haber sido en un pleito anterior entre las mismas partes, sobre la misma cosa e igual causa de acción. MP Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753 (1981); Figueroa v. Banco de San Juan, 108 D.P.R. 680, 687 (1979); Pagan Hernández v. U.P.R., 107 D.P.R. 720 (1978). A esos efectos, se prohibe que una de las partes vuelva a litigar asuntos planteados o que pudo haber planteado en una solicitud de relevo de sentencia ni “puede utilizar el mecanismo de una acción independiente para impugnar por errónea la validez de la sentencia y de los procedimientos de ejecución..., ni para levantar cuestiones sustantivas que debieron haberse planteado como defensas afirmativas en el juicio. ” Figueroa v. Banco de San Juan, supra. El Artículo 1204 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3343, dispone que:

“Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, causas, las personas de los litigantes y la calidad con que lo fueron... ”.

Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas.
No obstante, las partes pueden contar con el remedio de relevo de sentencia, según estatuido en la Regla 49.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. 131. Además, luego de transcurrir el término fatal de seis (6) meses para solicitar el relevo, el tribunal tiene “la facultad inherente..., ya sea a su propia instancia o a instancia de parte interesada o afectada, para dejar sin efecto en cualquier momento una sentencia nula u obtenida mediante fraude. ” Figueroa v. Banco de San Juan, supra, pág. 688; Banco Santander P.R. v. Fajardo Farms Corp., 96 J.T.S. 100, pág. 1356.
En el caso de marras, Iván W. hijo, quien no fue notificado de la celebración de la subasta ni de la orden de ejecución, solicitó el 15 de abril de 1999 la nulidad de la subasta celebrada en el Centro Judicial de Ponce ante el Tribunal de Primera Instancia, Sala Superior de Ponce. Dicho Foro negó la antes referida solicitud bajo el fundamento de que la misma había sido considerada anteriormente. Si bien es cierto que el propósito de la doctrina de cosa juzgada es promover la finalidad de las controversias judiciales, Worldwide Food Dist. v. Colón Bermúdez, 93 J.T.S. 114; Ramos González v. Medina, 121 D.P.R. 312 (1988), y Lausell Marxuach v. Díaz de Yáñez, 103 D.P.R. 533 (1975), los tribunales, como antes expresáramos, tienen facultad para dejar sin efecto en cualquier momento una sentencia nula. “Las normas procesales deben interpretarse de forma liberal para evitar la multiplicidad de acciones litigiosas y la complejidad innecesaria de las acciones. ” Ramos v. Trans. Oceanic Ins. Co., 103 D.P.R. 298 (1975). Véase, además, Cuevas Segarra, Práctica Procesal Puertorriqueña, Procedimiento Civil, Cap. 1, Publicaciones J.T.S., Vol. II, págs. 5-7 (1979) y Banco Santander v. Fajardo *734 Farms, supra, a la pág. 1357. Nuestro Tribunal Supremo ha expresado que no es permisible que al administrar la justicia se permita que los tecnicismos en los trámites procesales nieguen a un reclamante su derecho. Srio. del. Trabajo v. Mayagüez O.M. Club, 105 D.P.R. 279 (1976). Como se dice en Vda. de Rivera v. Pueblo Supermarkets, 102 D.P.R. 134, 138 (1974), citando a Travelers Indemnity Co. v. United States, 382 F.2d 103 (10th Cir. 1967): “Los fines de la justicia no se satisfacen cuando se permite la derrota de reclamaciones justas por razón de reglas técnicas. ” 
En este pleito, tanto Iván D. padre, su esposa y la sociedad de bienes gananciales por ellos compuesta como Iván W. hijo, su esposa y la sociedad legal de bienes gananciales fueron partes demandadas. El caso se vio en rebeldía, dictándose finalmente sentencia contra Iván D. padre y desestimándose la demanda en contrá de los otros demandados. Dicha sentencia le fue notificada solamente a Iván W. hijo. De ello se enteró Iván D. padre, dejando transcurrir los términos apelativos, por lo que la misma advino a ser final y firme. 
El demandante solicitó, en ejecución de la sentencia, la subasta del inmueble embargado. Iván D. padre planteó la nulidad de la sentencia ante el Foro de instancia repetidamente, resolviéndose en los méritos y correctamente que no le asistía la razón. Aunque también éste solicitó la nulidad de la subasta, nunca utilizó como fundamento que la publicación de los edictos fue una defectuosa. Posteriormente, y por primera vez por Iván W. hijo junto con su madre, la señora Elsa Fraticelli, plantearon tal nulidad el 2 de mayo de 1997, la cual se denegó. No obstante, Iván W. hijo volvió a solicitar dicha nulidad el 15 de abril de 1999, alegando, por primera vez el fundamento de la insufuciencia del procedimiento de embargo, además de reiterar ser el único propietario del predio de terreno embargado y subastado. Contrario a lo que resolvió el Foro recurrido el 26 de abril de 1999, nunca en instancia se adjudicó quién era el dueño de la finca embargada ni se pasó juicio sobre el procedimiento de la subasta, no obstante, las diversas solicitudes de nulidad presentadas. Tampoco este Foro apelativo ni el Tribunal Supremo se han expresado sobre estos aspectos. 
De lo anteriormente expuesto, según surge del expediente original de instancia, es forzoso concluir que la alegación del peticionario, Iván W. hijo, como dueño del predio subastado, era una válida que tenía que ser considerada en los méritos. Determinaremos si la subasta celebrada fue una nula o no.
III
La venta judicial se rige por las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III; Banco Gubernamental de Fomento v. Abarca, 109 D.P.R. 132 (1979). La Regla 51.8, Ibid, establece el procedimiento a seguir. Esta dispone:

“(a) Aviso de venta. Antes de verificarse la venta de los bienes objeto de la ejecución, deberá publicarse la misma por espacio de dos (2) semanas mediante avisos por escrito visiblemente colocados en tres sitios públicos del municipio en que ha de celebrarse dicha venta, tales como la alcaldía, el tribunal y la colecturía. Se publicará, además, dicho aviso en la colecturía y en la escuela pública del lugar de la residencia del demandando, cuando ésta fuera conocida, o en un diario de circulación general en el Estado Libre Asociado de Puerto Rico, por espacio de dos (2) semanas y por lo menos una vez por semana. El aviso de venta describirá adecuadamente los bienes a ser vendidos y se referirá sucintamente además, a la sentencia a ser satisfecha mediante dicha venta, con expresión del sitio, día y hora en que habrá de celebrarse la venta. Si los bienes fueren susceptibles de deterioro, el tribunal, a solicitud de parte, podrá reducir el término de publicación del aviso a menos de dos (2) semanas. Será nula toda venta judicial que se realice sin dar cumplimiento al aviso de venta en la forma indicada, sin perjuicio de la responsabilidad de la parte que promoviere la venta sin cumplir con tal aviso.

(b) Manera de hacer la venta. La venta judicial de bienes en cumplimiento de una orden de ejecución, 
*735
deberá hacerse por subasta al mejor postor, y tendrá lugar entre las nueve de la mañana y las cinco de la tarde. Una vez que se hubieren vendido bienes suficientes para cumplir la orden de ejecución, no podrán venderse bienes adicionales. Ni el oficial que cumpla la orden ni su delegado, ni ningún otro funcionario o empleado de cualquier sala, podrá comprar ni participar directa o indirectamente en la compra de los bienes a venderse. Cuando la venta sea de propiedad mueble susceptible de entrega manual, deberá aquélla estar a la vista de los postores, y venderse por lotes que tengan probabilidad de alcanzar los precios más elevados; y cuando la venta sea de propiedad inmueble, consistente en varias parcelas o lotes conocidos, deberán venderse separadamente, o si alguna porción de dicha propiedad inmueble fuere reclamada por tercera persona, y ésta exigiere que dicha porción se venda separadamente, deberá venderse en la forma exigida. Si se hallare presente el deudor declarado tal en la sentencia, podrá determinar el orden para la venta de la propiedad mueble o inmueble cuando se componga de objetos que puedan venderse con ventaja separadamente, o de varias parcelas o lotes conocidos, debiendo el alguacil ceñirse a sus instrucciones.

(c) Acta de subasta y entrega de bienes. Verificada la venta, el oficial a cargo de la misma levantará un acta por escrito describiendo lo acontecido durante la subasta y la adjudicación en venta al mejor postor, quien pagará el importe de la venta en dinero en efectivo o en cheque a la orden del oficial en cuestión. En casos extraordinarios, el tribunal podrá ordenar cualquier otra forma de pago. Si se tratare de bienes muebles, el oficial hará entrega al comprador de los bienes vendidos y si éste lo solicitare, le hará entrega de una copia del acta de subasta debidamente certificada por él. Dicha copia certificada constituirá evidencia oficial del título del comprador sobre los bienes vendidos subrogándole en los derechos del vendedor sobre dichos bienes. En caso de venta de propiedad inmueble, el oficial encargado de la venta otorgará escritura pública a favor del comprador ante el notario que este último seleccione, abandonando éste el importe de tal escritura. ”

En atención a lo aquí expresado es menester concluir que la publicación del aviso de subasta en el caso de marras fue insuficiente, ya que, contrario a lo dispuesto en la antes citada Regla, no se colocó el aviso de su celebración en la colecturía del pueblo de Yauco, lugar de residencia del demandado, lo que de por sí es suficiente para decretar la nulidad de la subasta celebrada en este caso. Dapena v. Urrutia, 109 D.P.R. 138, 141-142 (1979). Véase, también, Lincoln Savs. Bank v. Figueroa Ramírez, 124 D.P.R. 388 (1989); Arroyo v. Ortiz, 93 J.T.S. 53; In the Matter of Robert M. Lozano, 42 D.P.R. 966 (1984). Así, nuestro mas Alto Foro, en C.R.U.V. v. Registrador, 117 D.P.R. 662, 665 (1986), expuso que, además de colocarse el aviso de venta en tres sitios públicos del municipio en que se va a celebrar la venta, “[dje conocerse la residencia del demandado, el aviso, por lo menos, debe colocarse en dos lugares públicos.” [La colecturía y la escuela pública del lugar de residencia del demandado]. “De no conocerse, existe la obligación de notificar la venta mediante aviso en un periódico de circulación general.” C.R.U.V. v. Registrador, supra. La Regla es clara en cuanto a ello, no ofreciendo una alternativa, tratándose más bien “de dos supuestos distintos que dependen para su aplicación de si el demandante conoce o no el lugar de residencia del demandado. ” Virgilio López Quiñones v. Santiago Agosto Torres, Núm. KLCE-95-00556, Sentencia de 30 de octubre de 1995, Circuito Regional de San Juan, señor Aponte Jiménez, Juez Ponente, pág. 5.
A lo antes expuesto debemos añadir que en el caso de autos en el aviso de venta no se describió la estructura a subastarse, ni el precio de la misma. La publicación insuficiente de los avisos de venta, le niegan la existencia de un debido proceso de ley a las partes del proceso y provoca la nulidad de la subasta celebrada. Dapena v. Urrutia, supra. Véase, también, Lincoln Savs. Bank v. Figueroa Ramírez, supra; Arroyo v. Ortiz, supra; In the Matter of Robert M. Lozano, supra. De hecho, tampoco el oficial encargado de la venta ha otorgado escritura pública a favor del comprador de la propiedad, el demandante-recurrido, en cumplimiento con la Regla 51.8 (d), Ibid.
*736 Independientemente de ello, de un mero examen de los documentos que están en el expediente original del caso ante Instancia, surge claramente que el dueño del predio a subastarse es Iván W. hijo y el dueño de las edificaciones en dicho predio es de su padre, Iván D. padre, quien es el único que adeuda dinero al demandante y contra quien se dictó la sentencia final y firme que se ejecuta. Además, aparentemente, según surge del Registro de la Propiedad de San Germán, Tomo 54, Folio 199, Finca número 2,887, Yauco, la propiedad subastada es parte de otra de mayor cabida que no ha sido segregada. En atención a ello, nos encontramos con la situación fáctica de que la única propiedad que podía subastarse para cubrir la deuda al demandante fijada por sentencia, era una perteneciente al deudor, Iván D. padre, y que éste sólo era dueño de las edificaciones que había construido en el suelo ajeno de Iván W. hijo.
El Artículo 294 del Código Civil, 31 L.P.R.A. sec. 1161, establece que: “[l]o edificado, plantado o sembrado en predios ajenos y las mejoras o reparaciones hechas en ellos, pertenecen al dueño de los mismos... ”. No obstante, “[E]l dueño del terreno en que se edificare de buena fe, tendrá derecho a hacer suya la obra, previo el pago al dueño de la obra del costo de los materiales y la mano de obra, o del costo de reproducción de la misma al momento en que el dueño del terreno ejercitare su derecho, deduciendo la depreciación, lo que resultare mayor, o a obligar al que fabricó a pagar el precio del terreno. ” Artículo 297 del Código Civil, 31 L. P.R.A. sec. 1164. Esta actuación sólo puede ser ejercitada por el dueño del terreno, C.R.U.V. v. Román, 100 D.P.R. 318, 323 (1971), pero el edificante de buena fe [23] tiene derecho a retener la obra hasta que sea indemnizado. Castro Anguita v. Figueroa, 103 D.P.R. 847 (1975).
Conforme a los Artículos del Código Civil, ante citados, una subasta válida celebrada en la que se le adjudica en venta un inmueble edificado en suelo ajeno a una persona, conlleva que éste tenga sólo los mismos derechos que tiene el dueño de ese inmueble ante el titular del suelo. García v. Tribunal Superior, 89 D.P.R. 130 (1963). En consecuencia, es un defecto sustancial el que en el edicto no se hubiere indicado que la propiedad a subastarse consistía en las edificaciones pertenecientes a Iván D. padre sujetas a los derechos que éste tenía sobre las mismas, ya que estaban enclavadas en un suelo de Iván W. hijo. Metropolitan Marble Corp. v. Pichardo, 98 J.T.S. 65, pág. 982. En ningún momento, podía el Tribunal de Primera Instancia, en el caso de marras, subastar el suelo donde se encontraba la propiedad del demandado Iván D. padre, ya que no le pertenecía a éste y era el único deudor del demandante.
Por último, debemos mencionar que el peticionario, Iván W. hijo, dueño del predio de terreno subastado, según surge de la escritura número treinta y uno (31) sobre compraventa, ibid, ni los dueños regístrales de la propiedad fueron notificados de la celebración de la subasta, a pesar de que en la misma se iba a ejecutar tanto el inmueble que le pertenecía al demandado, Ivan D. padre, como el suelo donde éste había edificado sin estar segregado todavía y cuyo dueño, según establecido en la escritura número 31, ibid, era el aquí peticionario, Iván W. hijo. Es sabido que “[IJa ejecución forzosa de una sentencia procede contra las partes obligadas por la misma y aquellos con vínculos obligacionales de carácter solidario con dichas partes. ” Hernández Colón, Práctica Jurídica de Puerto Rico, Derecho Procesal Civil, Michie, 1997, Sección 6304, pág. 456.
De hecho, en este caso, aunque Iván W. hijo fue notificado de la sentencia del caso desestimándose la demanda interpuesta en su contra, nunca fue notificado de los documentos que se presentaban a la demandante, incluyendo la solicitud de ejecución y celebración de la subasta de su propiedad, ni de ninguna resolución relacionada con la adjudicación y subasta de su propiedad o con las solicitudes de nulidad de sentencia de Iván D. padre. La ausencia de estas notificaciones, resultó en una clara e impermisible violación al debido proceso de ley. Véase, Cepeda Torres v. García Ortiz, supra. Nuestro más Alto Foro ha establecido que el no notificar a una de las partes con titularidad de la propiedad a ser subastada es una falta grave. Metropolitan Marble Corp. v. Pichardo, supra. Por todo ello es forzoso concluir que la subasta celebrada es nula.
*737 IV
Finalmente, debemos señalar que el trámite judicial en este caso ha tardado considerablemente y se ha complicado primordialmente por la actuación del co-demandado Iván D. padre, quien en forma inmeritoria, terca y frívola se ha mantenido por derecho propio -quien aunque por tiempos breves tuvo representación legal, de inmediato tuvo desaveniencias con sus abogados y éstos tuvieron que renunciar a su representación legal-atacando una sentencia válida, final y firme que le obligaba a pagar una cantidad de dinero al demandante. “Ningún caso... [tiene] derecho a vida eterna...”. Santiago Dávila v. F.S.E., 113 D.P.R. 627, 632 (1982). Ciertamente, sus energías las debió invertir en pagar lo adeudado. No solamente con su actuación viciosa tomó tiempo considerable a nuestros tribunales de justicia en perjuicio de otros litigantes que esperan se le resuelvan sus pleitos con prontitud y del erario público, sino que arriesgó los derechos de propiedad que tenía y tiene derecho Iván W. hijo. 
Aunque esta sentencia le hubiera sido notificada a su hijo solamente, él se enteró de la misma y se cruzó de brazos. Es sabido que por esa razón en la fecha del archivo en autos de la sentencia, aunque no comenzó a decursar el término jurisdiccional de treinta (30) días para recurrir de la misma, dicho plazo quedó sujeto a la doctrina de incuria. 
De otro lado, también ha sido causa de la dilación y del confuso y complicado trámite procesal posterior a la sentencia dictada en este caso, el que Iván W. hijo no contara con los servicios de un abogado, excepto unas comparecencias aisladas, incompletas y a veces incomprensibles, que hizo al Foro de instancia antes del 2 de mayo de 1997, fecha en que compareció representado por abogado. 
Las actuaciones de estos co-demandados ratifican la sabia norma de que los litigantes no deben representarse por derecho propio, aun en los casos en que éstos sean abogados. Además, de la falta de conocimiento legal y de las normas procesales aplicables, las partes están envueltas en las emociones que causan estas controversias y adolecen de la objetividad requerida para poder argumentar y presentar con eficacia sus alegaciones ante los tribunales de justicia. Ciertamente, en el caso de marras, las partes deben continuar todo trámite legal representadas por sus abogados, de manera que el procedimiento pueda ser completado sin dilación alguna.
V
En atención a lo anteriormente expresado, se expide el auto solicitado; se revoca la Resolución recurrida; se anula la venta judicial, y se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Ponce, para que continúe el trámite procesal posterior a sentencia, a instancia de parte y en forma consistente con lo aquí dispuesto.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2000 DTA 25
1. Esta misma dirección fue la que este co-demandado utilizó en sus escritos posteriores ante el Tribunal de Instancia.
2. De la escritura pública número treinta y uno (31) de 10 de octubre de 1985 sobre compraventa otorgada ante el notario público Rolando Emmanuelli Sepúlveda surge que el dueño del predio de terreno subastado es el peticionario, Iván W. Hijo, a lo cual nos referimos más adelante.
3. Es de rigor señalar que en sus escritos Iván D. padre utiliza la misma dirección postal de Iván W. hijo.
*738 4. Esta reconvención fue enmendada posteriormente para aumentarse la cuantía reclamada a doscientos mil dólares ($200,000.00).
5. En lo pertinente, dicha Resolución dice así:

“A preguntas reiteradas por el Tribunal a si está preparado el compareciente, para ventilar la moción que al amparo de la Regla 49.2 ha interpuesto, éste informa que no. Insiste que en este caso, [según inferimos de su planteamiento, la razón de pedir está predicada en el concepto defraude y presumimos que el concepto defraude que invoca el peticionario es uno defraude intrínseco, o sea, fraude al Tribunal que sería el que daría base para que según sus alegaciones el Tribunal emita la correspondiente resolución, si se probara ese fraude], se deje sin efecto la sentencia.

A pesar de las gestiones que ha hecho el señor compareciente de la moción que aquí se considera y las múltiples oportunidades que el Tribunal le ha dado para que consiga abogado o para que él se defienda por propio derecho, en el día de hoy comparece el peticionario y manifiesta que no está preparado, y su insistencia vehemente es una en el sentido de que se paralicen los procedimientos hasta que los foros administrativos a los que él ha comparecido resuelvan. ”

6. Inclusive, el Tribunal de Primera Instancia refirió este caso al Presidente del Colegio de Abogados para que le ofrecieran asistencia legal a dicho demandado, por lo que volvió a posponer la vista para el 24 de febrero de 1995.
7. El 2 de junio de 1994, Iván D. padre había presentado, también, copia de la misma junto a otros documentos ante el Tribunal Supremo de Puerto Rico en el caso AB-94-31.
8. En ésta, Iván D. padre expresó que:

“Se hizo subasta ilegal de mi propiedad, donde esas tierras todavía están registradas a nombre de Librado Oliveras Caraballo y de mi abuela (difuntos); estas tierras no han sido segregadas todavía por los hijos..

Cuando se fue a ejecutar la orden de Desahucio para mi residencia, la misma vino a nombre de Iván W. Oliveras Fraticelli (mi hijo que vive aparte, casado, mayor de edad y con hogar debidamente constituido). El alguacil Francisco Feliciano Alcántara de Ponce se hizo acompañar de la Policía de Yauco y cuando el Sargento Julio C. Rosado Vera de Yauco se percató del error de la orden paralizaron de inmediato la acción hasta el presente que el Hon. Tribunal Sala de Ponce estudia la ilegalidad de la misma. Ya estos funcionarios habían subido a mi residencia para lanzarme a la calle... ”.

9. El demandado, Iván D. padre, expuso que:

“Anduve los pasos necesarios para hacerle saber al Hon. Tribunal Superior, Sala de Ponce, que yo, Iván D. Oliveras Antonmattei, no tenía deuda alguna con el Sr. López Rivera y que la casa que querían desahuciar, así como el mobiliario era mía y no de mi hijo... ”.

10. En ésta, el peticionario Iván W. hijo declaró:
6. Que la propiedad en el Bo. Almácigo Bajo de Yauco, (Km. 1.1 Carretera #137) fue construida y es propiedad [sic] de mi padre Iván D. Oliveras Antonmattei, lo que podría probar en algún momento. ”
11. El demandado, Iván D. padre, expresó que la casa a ejecutarse era suya.
12. Ciertamente, de un examen de la prueba documental presentada por ambas partes, claramente el Foro recurrido debió percatarse de que la finca a subastarse era propiedad de Iván W. hijo, quien en la sentencia dictada había sido exonerado de pagar lo adeudado, y de que lo que pertenecía a Iván D. padre, -quien se había determinado que era el único responsable de una deuda para con el demandante- eran las edificaciones que había en dicha propiedad.
*739 13. De dicha escritura surge que Iván W. hijo compró la propiedad objeto de controversia libre de cargas a la señora Elisa Rodríguez, casada con Don Cruz del Carmen Oliveras Madreras.
14. Una sentencia nula es aquella que “se ha dictado sin jurisdicción sobre la materia o las partes, o, en alguna forma infringe el debido proceso de ley. ” Figueroa v. Banco de San Juan, supra, pág. 689.
15. “Rehusamos reducir a la tiesa matemática la función de administrar justicia”. Pueblo v. González Rivera, 132 D.P.R. 517, 523 (1993).
16. Este caso tipifica lo necesario e imprescindible de que las partes en la mayoría de los casos tengan representación legal.
17. Iván D. padre presentó certiorari ante este Foro apelativo para revisar la Resolución del Tribunal de Primera Instancia que denegó la solicitud de nulidad de la subasta celebrada por Iván D. padre. Esta fue desestimada por este Foro por falta de jurisdicción. El Tribunal Supremo posteriormente confirmó dicha Resolución. Ello no impedía que las partes volviesen a plantear el asunto ante el Foro de instancia. A esos efectos, en Banco Popular v. Mun. de Aguadillo, 97 J.T.S. 152, se expresó que cuando un foro apelativo desestima un caso interlocutorio por y falta de jurisdicción nada impide que se vuelva a reproducir el planteamiento en instancia oportunamente.
18. El acta de subasta, en lo pertinente, dice así:

“El día 20 de febrero de 1992, a las 10:30 de la mañana, en el Centro Judicial de Ponce, y a tenor con la sentencia dictada el día 31 de mayo de 1990 por el Tribunal Superior de Puerto Rico en el caso de epígrafe, archivada en autos el 21 de junio de 1991, el Alguacil suscribiente, luego de haberse publicado los correspondientes avisos de venta en pública subasta en el Tablón de Edictos del Centro Judicial de Ponce, en el Tablón de Edictos de la Alcaldía de Ponce, así como en el Tablón de Edictos de la Escuela Luis Muñoz Marín, de lauco, Puerto Rico, procedió a vender en pública subasta el bien inmueble... ”.

19. Si bien es cierto que un tribunal apelativo no intervendrá con las determinaciones de hechos ni con la adjudicación de credibilidad que hizo el juzgador de los hechos, salvo que haya mediado prejuicio o error manifiesto de su parte, Quiñones López v. Manzano Pozas, 96 J.T.S. 95; López Vicil v. ITT Intermedia, Inc., 97 J.T.S. 42, pág. 838, éstos están en igualdad de condiciones para analizar la prueba documental o pericial. Sepúlveda Rivas y otros v. Departamento de Salud, 98 J.T.S. 50, págs. 943, 949 y 953; Armstrong v. Ortiz, 105 D.P.R. 634, 635 (1977).
20. Así lo percibió el Tribunal de Primera Instancia cuando la Jueza, señora Elba Rosa Rodríguez Fuentes, determinó que el problema era a quién pertenecía la propiedad. En consecuencia, lo procedente era examinar el trámite de la subasta y los documentos relativos a la propiedad para determinar quién era el dueño del predio de terreno y otras propiedades embargadas y si la subasta era válida o no.
21. La Regla 51.8 (b) de las de Procedimiento Civil, ibid, dispone que:

“...cuando la venta sea de propiedad inmueble, consistente en varias parcelas o lotes conocidos, deberán venderse separadamente, o si alguna porción de dicha propiedad inmueble fuere reclamada por tercera persona, y ésta exigiere que dicha porción se venda separadamente, deberá venderse en la forma exigida. ”

22. El Registro de la Propiedad “... no da ni quita derechos... su función no tiene por objeto declarar la existencia o inexistencia de un hecho dudoso... Ello es materia de la exclusiva competencia de los tribunales.” U.S.I. Properties v. Registrador, 124 D.P.R. 448, 467 (1989).
23. “El consentimiento del dueño convierte la construcción en suelo ajeno en una de buena fe". C.R.U.V. v. Román, supra. Por ello, no tenemos duda alguna de que el demandado, Iván D. padre, era un constructor de buena fe.
24. El Tribunal de Circuito de Apelaciones en un caso de venta judicial de un predio donde se encontraban construidas varias estructuras pertenecientes a diferentes dueños, estableció que el hecho que no se le hubiese pagado al momento de la subasta *740 el interés propietario al dueño de la estructura no invalidaba la subasta. María Consuelo Rivera Bidot v. Rafael René Raúl, Núm. KLCE-95-00553, sentencia de 20 de noviembre de 1997, Circuito Regional II, señora Rodríguez de Oronoz, Juez Ponente.
25. A esos efectos, dispone el Artículo 158 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2554, que:

“13ro. El edificio construido en suelo ajeno, pero sin perjuicio del derecho del propietario del terreno, y entendiéndose sujeto a tal gravamen solamente el derecho que el mismo que edificó tuviere sobre lo edificado. ”

26. Tampoco fue notificado el Doctor Gabriel Rigau, a favor de quien aparece inscrita una hipoteca por la suma de seiscientos dólares ($600).
27. Una parte indispensable es aquella que tiene tal interés en la cuestión envuelta que no puede dictarse un decreto final entre las partes en la acción sin lesionar y afectar su interés. Fuentes v. Tribunal de Distrito, 73 D.P.R. 959, 981 (1952). Por imperativo constitucional, ninguna persona puede ser privada de su libertad o propiedad sin un debido proceso de ley. Cepeda Torres v. García Ortiz, 132 D.P.R. 698 (1993). “La notificación de los escritos a las partes es esencial para cumplir con el debido proceso de ley”, Hernández Colón, Ibid, pág. 149. Es por ello que “la falta de una adecuada notificación podría afectar el derecho de una parte a cuestionar la sentencia dictada”. Falcón Padilla v. Maldonado Quirós, 95 J.T.S. 109, pág. 5. Si no se cumple con dicho trámite, la sentencia no surte efecto alguno y no puede ser ejecutada. Ibid. “Ello resulta ser una forma adicional de proteger los derechos de las partes, y nos demuestra una vez más la importancia de notificar las sentencias dictadas por el tribunal. ” Ibid.
28. No nos expresaremos sobre la posibilidad de que el demandante pueda tener una causa de acción sobre daños y perjuicios por todas las actuaciones contra Iván D. padre, los cuales pueden conllevar un abuso del derecho.
29. Sobre este aspecto, nuestro más Alto Foro dispuso en Colón Torres v. A.A.A., 97 J.T.S. 60, a la pág. 977, que la doctrina de incuria ha sido definida como:
“dejadez o negligencia en el reclamo de un derecho, los cuales, en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad. ” Aponte v. Srio. de Hacienda, E.L.A., 125 D.P.R. 610, 618 (1990). Sobre el particular, en Pérez Villanueva v. Junta de Apelaciones del Sistema de Personal, supra, pág. 391, señalamos que:
“[E]n dicha doctrina, no basta el mero transcurso del tiempo para impedir el ejercicio de la causa de acción, sino que deben evaluarse otras circunstancias antes de decretar la desestimación del recurso instando. [Citas omitidas]. Circunstancias tales como la incurrida, el perjuicio que esta última acarrea, y el efecto sobre intereses privados o públicos involucrados. Rivera v. Depto. de Servicios Sociales, supra. Además, cada caso deberá ser examinado a la luz de sus hechos y circunstancias particulares. García Troncoso v. Adm. del Derecho al Trabajo, supra.” (Enfasis Suplido)
30. De hecho, Iván W. hijo compareció por primera vez junto con su madre, quien había sido demandada y fue, también, exonerada en la sentencia dictada. Esta no tenía ninguna justificación para solicitar la nulidad de esa sentencia, que le favorecía, ni de la subasta de una propiedad que no le pertenecía y en lo que no tenía interés propietario alguno que proteger.
31. Lo aquí expresado no conlleva la emisión de juicio alguno sobre la acción en daños y perjuicios que presentó Iván W. Oliveras y su madre Ana E. Fraticelli en contra del aquí demandante, su esposa y la sociedad de bienes gananciales constituida por ambos en el Caso Civil número JDP96-0248 de la Sala Superior de Ponce, fundamentada en un “embargo ilegal y abuso del derecho”.